**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Civil Action Number:

OPEN ACCESS FOR ALL, INC.,

      Plaintiff,

vs.

GRUBHUB HOLDINGS, INC.
d/b/a Grubhub and www.grubhub.com,

      Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff Open Access For All, Inc. ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Grubhub Holdings, Inc. ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

### INTRODUCTORY STATEMENT

1.    Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Grubhub Holdings, Inc.'s business.

2.    Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of**

1

**Discrimination** and exclude the visually-impaired.

3.      When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4.      This case arises out of the fact that Defendant Grubhub Holdings, Inc. has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5.      Defendant Grubhub Holdings, Inc. (also referenced as "Defendant") controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.grubhub.com ("Website").

6.      Defendant's Website offers goods and services for a multitude of eating and drinking establishments (which include, but not limited to: restaurants, cafés, snack shops, and fast food restaurants).

7.      This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendant

effectively and timely such that their access to the multitude of Places of Public Accommodation (which Defendant's Website links to) is/are not impeded.  At the current time, such impediment has rendered the physical Places of Public Accommodation Defendant's Website acts as a gateway to are not fully accessible to the visually impaired.

8.      This complaint also seeks compensatory damages as compensation for having been subjected to unlawful discrimination by Defendant as a result thereof.

## JURISDICTION & VENUE

9.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

10.     This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

11.     State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

12.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District.

13.     In addition, the Defendant is authorized to conduct business within the state of Florida as a foreign for profit corporation.

14.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

15.     Plaintiff Open Access For All, Inc. (also referenced as "Plaintiff" and "Open Access For All") is a non-profit corporation formed under the laws of the State of Florida and maintains its principal office within this district.

16.     Members of Open Access For All, Inc. include individuals with sensory related disabilities as defined by the ADA, and are representative of individuals who have sensory related disabilities (particularly being blind or visually impaired) which is a disability protected from discrimination by the ADA.

17.     The purpose of Open Access For All is to represent the interest of its members by assuring places of public accommodation are accessible to and usable by the disabled and that its members are not discriminated against because of their disabilities. Open Access For All members have suffered and will continue to suffer direct and indirect injury as a result of the Defendant's discrimination until the Defendant is compelled to comply with the requirements of the ADA.

18.     Open Access For All members cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

19.     One or more of Open Access For All's members have suffered an injury that would allow them to bring suit in their own right.  One or more of Open Access For All members have been discriminated against as they have been deterred from (and have been denied the opportunity to) participate and benefit from the goods, services,

privileges, advantages, facilities and accommodations at Defendant's property equal to that afforded to other individuals. One or more of Open Access For All members have a well-grounded belief that any attempt to utilize Defendant's Website to order food and/or drink from a multitude of physical eateries, restaurants, cafés, snack shops, and fast food restaurants (Places of Public Accommodation) free of discrimination would be a futile gesture.

20.     Open Access For All members have a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the physical eateries serviced by Defendant's Website. Such threat of discrimination is not necessarily limited to the allegations contained within this Complaint. Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination in violation of the ADA by the Defendant.

21.     Defendant Grubhub Holdings, Inc. is the owner and operator of a Website under the brand name "Grubhub."

22.     Defendant was established in 2004 and is a publically traded company on the NASDAQ exchange. Grubhub is the nation's leading online and mobile food ordering company that connects at-home or in-office consumers with local takeout restaurants. The company's online and mobile ordering platforms allow the public to order directly from more than 55,000 takeout restaurants in over 1,200 cities in the United States and overseas in London. Grubhub processes more than 324,600 food orders a day and has 8.75 million active diners. The Defendant has offices in Chicago, New York and London, and a 24/7 customer service team with contact information available on the Defendant's

website. The lists of restaurants Grubhub can deliver from is located on the website as well.

23.     Defendant Grubhub Holdings, Inc.'s subsidiaries include Delivered Dish, Campusfood.com, Inc., and FanGo Software Systems, LLC. The Grubhub portfolio of brands includes Grubhub, Seamless, AllMenus and MenuPages.

## FACTS

24.     Open Access For All members' visual disabilities limit major life activities, and they require assistive technologies, auxiliary aids and services for effective communication.

25.     At all times material hereto, Defendant Grubhub Holdings, Inc. was (and is) an organization which owns and operates the Website www.grubhub.com under the brand name "Grubhub."  Defendant's Website is offers goods and services delivered to the public from restaurants, cafés, and bakeries, snack shops, and fast food restaurants ("eating/drinking establishment(s)"), each of which is a Place of Public Accommodation serving prepared ready-to-eat meals (food and drink) as defined by the ADA as: "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E)

26.     Each eating/drinking establishment which Grubhub represents by acting as an intermediary to serve its food/drink and having that food/drink delivered to the public, is available to every individual ("the public") with access to the internet thought their computer or smart phone.

27.     Since Grubhub picks up the ready-to-eat meals from eating/drinking establishments and delivers the ready-to-eat meals to the public[1], Defendant is an integral part of the eating/drinking establishments. Thus, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant Grubhub Holdings, Inc. is a private entity which operates (in part) "[A] restaurant, bar, or other establishment serving food or drink," 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

28.     Each eating/drinking establishment which Grubhub represents is open to the public and are a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(B) and 28 C.F.R. Part 36.

29.     Defendant's Website is an electronic eating/drinking establishment (business) which permits the public to obtain information on a multitude of eating/drinking establishment's menu selections online and then providing the ordering and payment platform for each eating/drinking establishment. Grubhub's Website then connects independent drivers/personnel to pick up and deliver the ready-to-eat meals and delivery them to the public brand merchandise. Defendant's Website also provides policy information from the various eating/drinking establishments, the location of the various eating/drinking establishments, the expected time for delivery of ordered ready-to-eat meals  (prior to the public's placement of an order), the ability to purchase Grubhub gift cards, and provides other information Defendant is interested in communicating to its customers.  Through its business structure (which includes its Website), Defendant is statutorily required to provide auxiliary aids and services for the disabled.

---

[1] At their homes, offices, or other locations

30.     For all of the reasons as delineated herein, clearly, the Website is an integral part of the goods and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(B) of the ADA[2].

31.     Defendant's Website is also a public store that is on-line, where the public can view and purchase Grubhub gift cards online and have the Grubhub gift cards electronically sent to oneself or others via email (electronic gift cards for use on the Website, app, or to print out). Therefore, the Website is itself a sales establishment which is a Place of Public Accommodation pursuant to 42 U.S.C. §12181(7)(E).  As such, the Website must comply with all requirements of the ADA.

32.     Since Defendant's Website permits the public to order food online for delivery to one's home, office or other location,  the Website is itself a restaurant / food service establishment which is a Place of Public Accommodation pursuant to 42 U.S.C. §12181(7)(B).  As such, the Website must comply with all requirements of the ADA.

33.     If the Defendant offers a Website, the Defendant must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

34.     At all times material hereto, Defendant Grubhub Holdings, Inc. was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public as part of their Place of Public Accommodation, Defendant (as

_____

[2] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §§s 12181(7)(B)&(E) and 28 C.F.R. §36.104(2). As such, Defendant has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").[3]

35.    Open Access For All members' are customers who are interested in purchasing ready-to-eat meals delivered to their homes, offices, or other chosen locations, as offered through the Defendant's Grubhub Website.

36.    One or more Open Access For All members had called the Defendant's Grubhub customer service phone number (as found through a Google internet search) store to inquire about the various food establishments offering ready-to-eat meals delivered by Grubhub. Defendant's representative failed to fully assist Open Access For All members, and referred them to its Website.

37.    One or more Open Access For All members attempted to utilize Defendant's Website to browse through the eating/drinking establishments, to become educated as to the ready-to-eat meals and gift cards available with the intent of ordering ready-to-eat meals and gift cards online for delivery to his/their home.

38.    Open Access For All members utilize screen reader software, which when utilized allows individuals who are visually impaired to communicate with internet website(s).

---

[3] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

39.     Defendant's Website lacks accommodations necessary to allow visually impaired individuals who use screen reader software access to the Website, prompting information to locate and accurately fill-out online forms and to browse through the eating/drinking establishments Grubhub provides, to become educated as to the ready-to-eat meals and gift cards available for the purposes of purchasing ready-to-eat meals and gift cards Grubhub provides.

40.     One or more Open Access For All members attempted to locate an *Accessibility Notice*[4] which would direct them to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with the Defendant.

41.     The fact that visually impaired individuals cannot (and could not) communicate with Defendant exclude those visually impaired individuals from accessing Defendant's Website (thus access to the eating/drinking establishment's physical locations), and left one or more Open Access For All members with the feeling of segregation, rejection, and isolation, as those visually impaired individuals were (and are) unable to participate in the same manner as provided to the sighted public.

42.     Open Access For All members' inability to access and use accessible auxiliary aids and services has impaired, obstructed, hindered, and impeded their ability to enjoy the eating, drinking and shopping experience for ready-to eat meals and gift cards offered by Defendant's business at Defendant's Website, which is a gateway to the eating/drinking establishment's physical locations.  This inability to enjoy and learn

---

[4] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

about ready-to eat meals and gift cards Defendant's Grubhub business provides has resulted in a *virtual barrier* which has precluded Open Access For All members' enjoyment of and access to Defendant's goods and services.  Open Access For All members' inability to enjoy ready-to eat meals and gift cards Grubhub provides hindered, impeded and inhibited their entry to the litany of eating/drinking establishments which utilize  Defendant's Website food and drink order and delivery service.

43.     Open Access For All members have missed out on purchasing and enjoying the goods and services Defendant's Grubhub business provides, and as such, they have suffered particularized harm and an injury in fact Because Open Access For All members' cannot communicate with Defendant, they have not had access to the huge selection of food and drink and gift cards ordered for delivery safely, quickly and effectively, which Defendant offers to the public.

44.     Open Access For All members continue to desire to patronize Defendant, but are unable to do so, as they are unable to effectively communicate with Defendant in order to obtain access to Defendant's the huge selection of food and drink (and gift cards) available through the huge selection of eating establishments offered by Grubhub Website. Therefore Open Access For All members are unable to participate in the goods and services offered at the various physical locations of the eating establishments offered by Defendant. Open Access For All members' inability to communicate with/comprehend Defendant's business effectively has impeded Open Access For All members' ability to patronize the eating establishments offered by Defendant.  As such, Open Access For All members (and others with vision impairments) will suffer

continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

45.     On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

46.     On information and belief, Defendant has not instituted an Effective Communications Committee to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

47.     On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

48.     On information and belief, Defendant has not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of the Defendant's Auxiliary Aids and Services by individuals with disabilities.

49.     On information and belief, Defendant has not instituted an Automated Accessibility Testing program.

50.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

51.     On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have the

www.grubhub.com website, Applications, and Digital Assets accessible to the visually impaired community.

52.     On information and belief, Defendant's Auxiliary Aids and Services do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[5].

53.     On information and belief, Defendant does not have an Axillary Aids and Services Accessibility Policy.

54.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Axillary Aids and Services.

55.     On information and belief, Defendant has not offered any other credible from of Auxiliary Aids and Services other than its Website.

56.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

57.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

58.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites, such as the www.grubhub.com website.[6]

---

[5] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

59.     On information and belief, the Defendant is aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and Services which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

60.     On information and belief, Defendant is aware of need to provide full access to all visitors to its www.grubhub.com website.[7]

61.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

62.     Such barriers result in punishment and isolation of blind and low vision individuals from the rest of society.

63.     According to the National Federation for the Blind[8], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 469,300 individuals with visual disabilities living within the state of Florida[9].

64.     According to Statistic Brain Research Institute[10], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores such as www.grubhub.com and  have made an internet

---

[6] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[7] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/), (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )

[8] Statistics for 2015, see  https://nfb.org/blindness-statistics

[9] 469,300 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2014; see https://nfb.org/blindness-statistics

[10] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/

purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

65.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Open Access For All members' inability to shop for themselves.

66.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Open Access For All members is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

67.     Open Access For All, Inc. has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**Trespass Violations**

68.     Open Access For All members utilize their personal computer(s) to access websites such as the Defendant's www.grubhub.com website. As do members of the public, Open Access For All members use their personal computers as a method of conveyance of their personal information.

69.     As do members of the public, Open Access For All members store their personal information and retains their browsing history on their personal computer.

70.     Throughout the Website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

71.     The Defendant informs the Website user that the user's information and browsing history is collected is used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its website and commences to shop on that website is subject to having his/her personal information conveyed to third parties. According to the Defendant's Website, those third parties include (but may not be limited to): (i) the Defendant's affiliates (including but not limited to Seamless Europe, Ltd., "for any purpose" without so naming any other affiliates or what "any purpose" entails), (ii) service providers (without so naming the service providers, but including those who provide payment processing, website hosting, data analysis, infrastructure provisioning, IT services, customer service, email delivery services, and other similar services), (iii) other third parties (without so naming the third parties, and again sharing visitor information for "any purpose"), (iv) to law enforcement officials (if so required to be transmitted by said law enforcement), and (v) to third party sponsors of Promotions (without so naming the third party sponsors of Promotions).

72.     Open Access For All members are unable to comprehend Defendant's Website; therefore, they have had no choice (and therefore no knowledge) of the Defendant's installation of software and collection of the website user's browsing history and analytics placed on their computers.

73.     Based upon the review of Defendant's Website, it is clear that, when a user accesses Defendant's Website, the Defendant installs software onto the user's computer.  It is clear that the Defendant has used browser cookies, Pixel tags and web beacons to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

74.     As such, through its Website, Defendant has committed a trespass against Open Access For All members since the Website places software on their respective personal computers without their consent.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

75.     Plaintiff Open Access For All, Inc. re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-67 above.

### Requirement for Effective Communication

76.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

77.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

78.     Section  28  C.F.R.  §36.303(c)  specifically  states  that  public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

79.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis

of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

80.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Each Underlying Business is a Place of Public Accommodation**

81.     By virtue of the fact that each eating/drinking establishment Grubhub offers to the public for the order, payment, and delivery of ready-to-eat meals through its Website is a physical Place of Public Accommodation pursuant to 42 U.S.C. §12181(7)(B), Defendant's Website is also a Place of Public Accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(B).  The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of accommodation.

82.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered ad ability to investigate and choose a ready-to-eat meal from a eating/drinking establishment, the visually impaired have no access to the goods and services of those eating/drinking establishments, each of which is a physical Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

83.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the

ADA to websites of public accommodations[11]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

84.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil  v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Andres Gomez v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

85.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

---

[11] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

86.     The www.grubhub.com website is a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(B) as it serves as an integral part of each of the eating/drinking establishments which Grubhub offers to the public wherein Grubhub provides the platform for the order and payment of ready-to-eat meals and also provides for the delivery of those ready-to-eat meals to public. The Website also provides information on the various locations of the eating/drinking establishments offered therein, and offers the public the ability to be educated as to the menu selection of each of those eating/drinking establishments, which in turn allows the public to determine if they wish to physically patronize the eating/drinking establishments within Grubhub's inventory of eating/drinking establishments, and to purchase a meal therein.  Importantly, the Website allows the pubic the ability to order food for pick up or delivery online, therefore the Website is itself a food service establishment.

87.     The Website is also a *Place of Public Accommodation* under pursuant to 42 U.S.C. §12181(7)(E) as the public is able to purchase Grubhub gift cards online (which meets the definition of 'sales establishment').

88.     As delineated above and pursuant to 42 U.S.C. §§s 12181(7)(B)&(E). Defendant is a *Public Accommodation* under the ADA because it because it owns and/or operates the www.grubhub.com  website, as defined within §§s 12181(7)(B)&(E), and is subject to the ADA.

89.     In addition, Defendant's representatives have referred customers to Defendant's Website for additional information, such that the Website is an integral part of the public's needs with respect to Defendant's business.

90.     By Defendant's representatives referring the public /visually impaired individuals to its Website for reference to information on goods and services instead of providing such information through its phone service, the Website has been rendered the sole means of communication with Defendant. For all these reasons delineated herein, clearly Defendant's Website is the integral component of Defendant's service business which interfaces with each of the physical eating/drinking establishments it represents. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as Open Access For All members) from fully accessing the physical eating/drinking establishments (business locations) Defendant represents through its Website.

91.     It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

92.     The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v.*

*Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[12] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[13] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

93.    Recent case law supports that the intangible barriers presented within Defendant's Website are violative of the ADA.  In rendering his decision that Winn Dixie Stores, Inc.'s website contained barriers to access which are prohibited by the ADA[14], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 **(emphasis added)**.

94.    At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services. Open Access For All members' injuries are real, have occurred, and are continuing. Open Access For

---

[12] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[13] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

[14] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

All members injuries will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

95.     Recent Case law supports the Plaintiff's position: that companies which that have not fully updated their websites so that they are accessible to visually impaired individuals are not immune to redress. See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

96.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

97.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

98.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

99.     As a result of the inaccessibility of Defendant's physical places of business precipitated by barriers within its Website, visually impaired individuals are denied full and equal access to the physical locations of the eating/drinking establishments Defendant offers within its Website, as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

100.     Types of website programming errors include (but are not limited to) *(i) Programming Error Types* ("PETs"), which are easily identifiable and correctable, *(ii) Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible, and *(iii)* Design Errors ( DE's)  that create empty headings and text fields that create confusion for a user that rely on the 'TAB' key to navigate a web page.

101.     A sampling review of just part of the Defendant's Website revealed that the Website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

102.    Further, the Defendant's Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

103.    More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

104.    Further, the Website does not offer include the universal symbol for the disabled[15] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

105.    There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

106.    The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who

---

[15]  ™ , or HTML "Accessibility" link for those individuals who are visually impaired

require the assistance of interface with screen reader software to comprehend and access Defendant's Auxiliary Aids and Services. These violations within Defendant's Website are ongoing.

**Violations of the ADA**

107.    As a result of the inadequate development and administration of Defendant's Website, the aggrieved parties (represented by Plaintiff Open Access For All, Inc.) are entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

108.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Open Access For All, Inc. injunctive relief; including an order to:

a) Require Defendant Grubhub Holdings, Inc. to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.grubhub.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b) Require Defendant Grubhub Holdings, Inc. to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.grubhub.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c)   Require Defendant Grubhub Holdings, Inc. to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of obtaining information on a multitude of eating/drinking establishment's menu selections, ordering any paying for ready-to-eat meals, and having those ready-to-eat meals delivered as well as becoming informed of eating/drinking establishment's physical locations and estimating the time for order and then delivery of ready-to-eat meals and becoming informed of and purchasing Grubhub gift cards online. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing ready-to-eat meals, and having those ready-to-eat meals delivered, as made available to the public through Defendant's Website.

109.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Grubhub Holdings, Inc.

## COUNT II – TRESPASS

110.   Plaintiff Open Access For All, Inc. re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–74 above.

111.   Open Access For All members' tangible personal property, being their computer and the personal information and browsing history stored therein, have suffered a trespass by Defendant on each and every date that each one of them have accessed

Defendant's www.grubhub.com website.   Open Access For All members' personal information has suffered a trespass due to the employment of software analytics by Defendant which are present on Defendant's Website, which the Open Access For All members have navigated.

112.   Open Access For All members (being unable to comprehend Defendant's Website to therefore become informed of Defendant's privacy/tracking policies) are unaware that Defendant's Website was placing software on their computers.

113.   Open Access For All members have not consented to the placement of software on their personal computers; therefore Defendant has committed a trespass against Open Access For All members.

114.   By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Open Access For All members' personal property in violation of the common law.

115.   Defendant's installation, operation, and execution of software on Open Access For All members' computers has impaired the condition and value of members' computers.

116.   At Defendant's Website location (https://www.grubhub.com/legal/privacy-policy), the Defendant states the following:

### What Types of Information Do We and Our Third Party Service Providers Collect From You?

"We and our third party service providers may collect your Non-Personal Information, including information about the device you are using in accessing and/or using the Sites, information from referring websites, and your interaction with the Sites.

We, our third party service providers and other third parties detailed below under "How Do We and Our Third Party Service Providers Use Information Collected

From You?" may use cookies, pixel tags, web beacons, and other similar technologies to better serve you with more tailored information and to facilitate your ongoing use of the Sites.

Your IP Address is automatically assigned to the computer that you are using by your Internet Service Provider (ISP) and is identified and logged automatically in our server log files whenever you visit the Sites, along with the time(s) of your visit(s) and the page(s) of the Sites that you visited.

We may obtain information about your physical location, such as by use of GPS and other geolocation features in your device, or by inference from other information we collect."

117.    As a direct and proximate result of Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with Open Access For All members' property, the Defendant has injured and impaired on the condition and value of Open Access For All members' computers as follows:

a)    By consuming the resources of an/or degrading the performance of Open Access For All members' computers (including space, memory, processing cycles and internet connectivity);

b)    By infringing on Open Access For All members' right to exclude others from their computers;

c)    By infringing on Open Access For All members' rights to determine (as owner of their computers) which programs should be installed and operated on therein;

d)    By compromising the integrity, security, and ownership of Open Access For All members' computers; and

e)    By forcing Open Access For All members' to expend money, time, and resources in order to remove the programs installed on their respective computers without notice or consent.

118.    For all of the foregoing, the Open Access For All members' have no adequate remedy at law.

**<u>DEMAND FOR RELIEF</u>**

**WHEREFORE,** Plaintiff Open Access For All, Inc. hereby demands judgment against Defendant Grubhub Holdings, Inc. and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Grubhub Holdings, Inc. has violated Open Access For All members' rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant Grubhub Holdings, Inc. to update its www.grubhub.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant Grubhub Holdings, Inc. to clearly display the universal disabled logo[16] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.grubhub.com website;

---


16

d) The Court enter an Order compelling Defendant Grubhub Holdings, Inc. to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

e) The Court enter an order requiring Defendant Grubhub Holdings, Inc. to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendant Grubhub Holdings, Inc. to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

g) The Court enter an Order directing Defendant to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

h) The Court to declare that Defendant's actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

i) The Court to award injunctive and equitable relief as applicable, including:

    i.     prohibiting Defendant from engaging in the acts alleged above;

ii. requiring Defendant to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice of Defendant's placement of software on their computer(s); and

iii. requiring Defendant to provide Plaintiff reasonable means to decline participation in Defendant's placement of software on his computer;

j) The Court award damages in an amount to be determined at trial;

k) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees;

l) As to the count of trespass, the Court to award Plaintiff other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendant from engaging in the conduct and practices of trespass as complained of herein; and

m) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 16th day of August, 2017.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*